UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

STEVEN T. BARYLA

CASE NO: 2:19-cr-160-FtM-60MRM
CASE NO: 2:19-cr-172-FtM-38MRM

**ORDER**

This matter is before the Court on Defendant's motions to set conditions of release filed in the cases captioned above. (No. 2:19-cr-160 (Doc. 33); No. 2:19-cr-172 (Doc. 28)).[1] Defendant Baryla is currently detained and in the custody of the United States Marshal at the Charlotte County Jail pending a final revocation hearing concerning alleged violations of his supervised release (No. 2:19-cr-160, Docs. 5, 6, 19) and pending trial of the charges alleged in an indictment returned on October 23, 2019 (No. 2:19-cr-172, Docs. 1, 7). At this time, the final revocation hearing is set for July 27, 2020, and the felony trial is set for the June 2020 trial term. In both matters, Baryla seeks conditions of release in lieu of detention due to the COVID-19 pandemic. (Doc. 33 at 9). As set forth below, the Court denies Baryla's request to be released pending his final revocation hearing, and therefore denies his request to be released pending his trial as moot.

**PROCEDURAL AND FACTUAL BACKGROUND**

On April 8, 2010, Baryla was charged in the District of New Jersey (No. 3:10-cr-243-JAP-1) with five felony counts of transporting and possessing child pornography.

---

[1] The two motions filed in these cases are nearly identical. Unless otherwise indicated, the Court will cite to the documents filed in the revocation matter, No. 2:19-cr-160-FtM-60 MRM.

Baryla was initially released on bond pending trial, but it was revoked, and he was detained, because he violated the conditions of his release. (D.N.J. No. 3:10-cr-243-JAP, Doc. 11). Pursuant to a plea agreement, Baryla entered a plea of guilty in 2011 to the first count of the indictment (transportation of child pornography), and he was sentenced to 72 months of imprisonment and 5 years of supervised release.

On July 13, 2015, Baryla's term of supervised release commenced in the Middle District of Florida, where he resided with his mother and girlfriend. On October 29, 2019, his supervising probation officer petitioned the Court to arrest Baryla and revoke his supervised release, alleging Baryla: (1) had been indicted once again for possessing child pornography between December 2018 and June 2019 (No. 2:19-cr-172); (2) possessed a computer with access to online services without approval; (3) used a computer or online service without approval; (4) possessed or viewed images of children in the nude or sexually explicit positions; and (5) failed to satisfactorily participate in sex offender treatment. (Doc 6).

Both the petition to revoke supervised release and the indictment are based on Baryla's alleged possession of two Apple iPhones, on which the government found not only the previously mentioned images and online access, but also internet searches for "sex offender loopholes," "how to change your name as a sex offender," "best states for a sex offender to live," "states where sex offenders don't have to register," and "how to get rid of Google results." (Doc. 28, pp. 16, 70).

Baryla initially appeared on the indictment on October 28, 2019, and on the petition to revoke his supervised release on November 7, 2019. During each appearance, Baryla did not oppose the government's request for an order of detention, and he waived his

right to a detention hearing. Due to his prior conviction for transportation of child pornography, Baryla faces a mandatory minimum of 10 years and up to 20 years imprisonment for the charge in the pending indictment (Doc. 39, ¶ 8), as well as a guideline recommendation of 12-18 months of imprisonment for the violations of supervised release (Doc. 6, p. 2) that would run consecutive to any sentence of imprisonment imposed for being convicted on the indictment.

## DEFENDANT'S REQUEST FOR RELEASE

Invoking 18 U.S.C. § 3142(f) and (i), which apply to the release or detention of a person pending trial, Baryla supports his request for an order of release by advancing three contentions related to the current COVID-19 pandemic: (1) that by virtue of his health condition he is more at risk of suffering severe consequences if he contracts the virus, and that he is more at risk of contracting the virus if he remains detained; (2) that his mother requires his assistance with shopping and transportation to medical appointments; and (3) that in-person meetings with his counsel are necessary to prepare his defense but they are temporarily no longer allowed by the Charlotte County Jail.

Conceding the absence of any report that inmates or staff in the Charlotte County Jail have tested positive for COVID-19, Baryla nevertheless argues that the facility's safeguards may ultimately prove inadequate, and that he would be less likely to contract the virus if released. Baryla further argues that he is at an increased risk of adverse health consequences because the facility is currently treating him for high blood pressure; he claims to be a non-insulin diabetic, meaning he manages his blood sugar by watching his diet and without any medication; and, he was discharged from the Army some ten or more

years ago for something purportedly related to asthma, though he has never needed any medical treatment for asthma since his discharge.

Despite both his suggestion that COVID-19 may be rampant but undetected in the Charlotte County Jail, and the acknowledgment that his 69-year-old mother with COPD and cancer "falls within the high risk category for COVID-19" (Doc. 33, ¶ 25), Baryla nevertheless argues that he should be released into her custody and live in her home so that he can go shopping for her and drive her to medical appointments. But Baryla's girlfriend also lives with his mother, and though his girlfriend is employed outside the home, she does not work before noon.

Finally, Baryla claims that preparation for his defense will necessarily include discussing the contents of spreadsheets and other matters with his counsel. While he can engage in such discussions by telephone and videoconferencing while detained, Baryla acknowledges that he would not be allowed to participate in videoconferencing via the internet while on release. So, Baryla argues that his proposed release to home detention should not only have exceptions for work, shopping and his mother's medical appointments, but that he should also be allowed to attend in-person meetings at the offices of his counsel.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 32.1 governs detention pending revocation of supervised release. Under Rule 32.1(a)(6): "The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence the person will not flee or pose a danger to any other person or to the community rests with the person."

And since the applicable guideline recommends a term of imprisonment for the violation of supervised release in this matter, Section 3143(a)(1) mandates: "the judicial officer **shall** order [the defendant] . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety or any other person or the community if released…." (emphasis added).

This provision is more stringent than the Section 3142 provisions governing detention pending trial. "The rationale behind imposing a more stringent standard for persons on supervised released is that a revocation proceeding is not a new criminal prosecution but part of the defendant's punishment for the underlying case." *United States v. Hoover*, No. 3:14-CR-00072-RCJ-CLB, 2020 WL 1549624, *1 (D. Nev. Apr. 1, 2020).

## ANALYSIS

Baryla's arguments for release under 18 U.S.C. § 3142—including subsection (i) for temporary release—do not apply to his request for release pending the final revocation hearing. Rather, the Court must follow the more stringent dictates of 18 U.S.C. § 3143(a)(1). Specifically, Baryla must be detained unless he shows "by clear and convincing evidence" that he is "not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). Baryla has not satisfied this heavy burden of proof.

The Court first notes that even before Baryla faced the pending charges supported by a great weight of evidence, and which collectively expose him to consecutive terms of imprisonment ranging from 11 to 22 years, the iPhones allegedly in his possession had already been used to search for "sex offender loopholes," "how to change your name as a sex offender," "best states for a sex offender to live," and "states where sex offenders

don't have to register." And since these phones and their content were in his mother's house and available to him despite the terms of his supervised release, Baryla has not carried his burden to demonstrate that his mother could appropriately serve as a third-party custodian; a showing made all the more difficult by her frail condition. Moreover, the federal court in New Jersey found it necessary to revoke Baryla's pre-trial release in the previous child-pornography matter. And the Court rejects Baryla's suggestion that trafficking in child pornography without making physical contact with minors does not pose a danger to the community. Such exploitation causes uniquely despicable harm to children and constitutes an especially reprehensible crime.

Even if the Court could grant Baryla a temporary release for a compelling reason, the Court finds that he has failed to demonstrate one. He has not shown that he is more likely to contract COVID-19 while detained in the Charlotte County Jail than while released with allowances to work, shop, transport his mother to medical appointments and attend meetings at the offices of his counsel. Indeed, his own exhibits offered during the April 27, 2020 hearing in these matters included a list of comprehensive (and to date, apparently successful) measures implemented by the Charlotte County Jail to protect inmates and staff. (Doc. 43, Exh. C). Contending that the facility's screening, isolation, distancing and sanitizing measures made while in "constant contact with the local Department of Health" are somehow insufficient, Baryla offers nothing more than unconvincing speculation that frequent contact with the public would improve his lot. Further, he merely offers conjecture of a more favorable prognosis while on release compared to how he might fare if diagnosed while under the vigilant surveillance of the facility.

Moreover, his proposed release plan would likely increase COVID-19 risks to others. It would expose his highly vulnerable mother to additional routes of transmission, such as Baryla's co-workers, Baryla's counsel, and the pretrial services and probation officers who would supervise Baryla, and it would expose those same supervisors and counsel to him, his coworkers and others with whom he might come into contact. And if Baryla were to violate the terms of release and require detention, as he did prior to his conviction in New Jersey, he would expose the facility to the contacts he had with the public while on release.

Nor has Baryla shown that his counsel is unable to adequately represent him. Baryla has not demonstrated that he cannot effectively communicate in confidence with his counsel via phone, videoconferencing or correspondence while detained. And while videoconferencing is an available method while detained, given the nature of the charge against Baryla, it would not be available if he were released.

A defendant's ability to confer with counsel, investigators and experts by phone and videoconference is generally adequate, *Hoover*, 2020 WL 1549624 at *2, and Baryla has not shown—given the nature of the case or the evidence at issue—that in-person meetings are required to adequately prepare a defense for either the trial or the final revocation hearing. But if Baryla finds in-person meetings with counsel a necessity, the United States Marshal can relocate Baryla to the Glades County Jail, which currently allows such meetings. Baryla must simply move for this relief.

For these reasons, the Court denies the motions.

Accordingly, it is hereby **ORDERED**:

(1) The Motion to Set Conditions of Release (Doc. 33) in No. 2:19-cr-160-FtM-60MRM is **DENIED**.

(2) The Motion to Set Conditions of Release (Doc. 28) in No. 2:19-cr-172-FtM-38MRM is **DENIED as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida on May 5, 2020.

*Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE