UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  Case No: 2:19-cr-172-FtM-38MRM

STEVEN THOMAS BARYLA
_____/

**APPEAL OF UNITED STATES MAGISTRATE JUDGE'S
DENIAL OF MOTION FOR ESSENTIAL MEDICAL TESTING**

STEVEN THOMAS BARYLA, by and through his undersigned attorney, files this appeal of the United States Magistrate Judge's Denial of Defendant's Motion for Essential Medical Testing pursuant to Rule 58(g)((2) of the Federal Rules of Criminal Procedure, and respectfully moves this Honorable Court for an order requiring the U.S. Marshal's Office (U.S. Marshal) or its designee to test the Defendant for COVID-19 (commonly known as the Coronavirus). As grounds in support thereof, the Defendant would state the following:

**BACKGROUND**

1. The Defendant filed his Motion for Essential Medical Testing on May 22, 2020. Doc. 46.

2. The motion outlined the reasons for concern about inmates' exposure to COVID-19 at the Charlotte County Jail. *See id.* [1]

3. The government filed a response to the motion on May 29, 2020. See Doc. 48.

---

[1] Mr. Baryla reports that subsequent to the filing of the motion, an inmate has been removed from his POD due to illness.

4. United States Magistrate Judge, Judge McCoy filed an Order on June 2, 2020 denying Defendant's Motion for Essential Medical Testing (Order). Doc. 49.

5. The Court found that ". . . Defendant's motion challenges the conditions of her confinement and, as such, his complaints must be raised in an appropriate civil cause of action after pursuing and exhausting administrative remedies" and therefore, was denied. *Id.*

6. In fact, the U.S. Marshal has advised the Office of the Federal Defender (FDO) that federal inmates housed in the Charlotte County Jail will <u>not</u> be tested for COVID-19. What remedies there are have been exhausted.

7. The Order did not conclude that testing should not occur, but rather that there is no authority to order testing. *See id.* The Court's order is wrong. The Court does have legal authority, which is detailed below.

8. If the Court does have such authority, the Order must be reversed as it is solely predicated on the lack of the authority to require medical testing.

## **MEMORANDUM OF LAW**

i. **LAW REGARDING FEDERAL INMATE REQUEST FOR MEDICAL EVALUATION.**

First, the Order is correct that generally federal prisoners can only challenge their conditions of confinement through a civil action. *See* <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971); *see also* <u>United States v. Loera</u>, 2017 WL 309825, at *27 (D. New Mexico 2017). Numerous district courts have adopted this general rule, though the Eleventh Circuit has not specifically addressed this issue. *See* <u>United States v. Luong</u>, No. CR 99-433WBSGGH, 2009 WL 2852111 at *1 (E.D. Cal. 2009); *see also* <u>Merryfield v. Kansas</u>. No. 09-3140-RDR, 2009 WL 3125470 at

2

*3 (D.Kan. 2009).  The general rule prohibits prisoners and pretrial detainees from circumventing the exhaustion requirements of the Prison Litigation Reform Act.  *See* Falcon v. U.S. Bureau of Prisons, 852 F. Supp. 1413, 1423 (S.D.Ill. 1994), aff'd, 52 F.3d 137 (7th Cir. 1995).

      Like most general rules, the requirement that a prisoner or pretrial detainee file a civil suit has numerous exceptions.  First, it is widely accepted that a defendant can challenge a condition of confinement if a condition of confinement affects his access to counsel or his ability to prepare a defense.   Doc. 30, pg. 2 (citing *United States v. Darcy*, No. 1:17-cr-00036-MR-WCM, 2020 WL 2573251 at *4 (W.D.N.C. May 21, 2020) (omitting other citations); United States v. Williams, No. 3:09-0090, 2009 WL 2824840 at *1 (M.D. Tenn. Oct. 26, 2009).  Second, courts routinely order medical evaluations for purposes of pretrial detention and application of the 18 U.S.C. § 3553(a) factors at sentencing.  *See* United States v. Ramirez-Robles, No. CR.A. 06CR00485MSK, 2007 WL 2021852 (D. Colo. July 11, 2007).

    Finally, in exceptional circumstances where permanent damage may occur, district courts have found that it has the authority to order the U.S. Marshal to perform essential medical care.  *See* United States v. Daprano, No. CR 04-2040 JB/KBM, (D. N.M. Order, filed August 24, 2007) (Doc. 166) (*cited in* Loera, 2017 WL 3098257 at *27); *see also* United v. Wallen, 177 F.Supp.2d 455, 458-459 (D. Maryland 2001) (requiring the U.S. Marshal to hold defendant in a hospital or infirmary and to provide medical services at the accepted standard of care).

    ii. **DEFENDANT'S REQUEST SATISFIES MULTIPLE EXCEPTIONS TO THE REQUIREMENT THAT AN INMATE FILE A CIVIL SUIT PRIOR TO MEDICAL EVALUATION.**

### A. The Failure to Test the Defendant for the Coronavirus Affects the Defendant's Ability to Access His Counsel and Prepare His Defense.

Mr. Baryla's primary concern, as it should be, is for his health and the health of his fellow inmates. However, his inability to determine whether he has been exposed to the Coronavirus affects his access to counsel.

The Chief District Court Judge for the Middle District of Florida found that it would pose a serious risk to public health and safety to conduct a felony plea or sentencing in person and in court during the national emergency declared by the President of the United States on March 13, 2020 under the National Emergencies Act. *See* Administrative Order, Case No. 8:20-mc-25 (March 29, 2020). Because COVID-19 is highly contagious, all in-court hearings have been suspended. *See id.*

Mr. Baryla's is now scheduled for trial on the August, 2020 trial term. Mr. Baryla has pointed out in prior filings the difficulty conducting meaningful attorney-client communication while incarcerated in Charlotte County. *See* Doc 28: Pg 3. The Charlotte County Jail has now re-opened for professional visitation but under circumstances it concedes do not permit social distancing. The Defendant can only effectively have access to his counsel if the Defendant's COVID-19 status is known. *See* Williams, 2009 WL 2824840 at *2. Moreover, at trial the Defendant must be able to closely confer with her defense counsel. The failure to be able to communicate with her counsel in close confines renders any counsel ineffective. As such, the Defendant cannot assist his attorney in responding to the Government's arguments. If COVID-19 is so serious that it has required a national emergency and a partial shutting down of the courthouse, then it is also necessary that defendants be tested and evaluated for COVID-19 before coming in to

Court. Otherwise, the fear of the unknown on the part of Defense Counsel and the Defendant will naturally limit access to counsel.

**B. The Pretrial Detention of the Defendant Permits the Court to Continue to Monitor the Defendant's Health Status, and the § 3553 Factors Permits the Court to Evaluate the Defendant's Current Physical Condition.**

Should Mr. Baryla ultimately be convicted, the Court must then weigh the Section 3553(a) factors. Under § 3553(a) is "…to provide the defendant with needed…medical care[.]" Mr. Baryla' health status, and particularly his possible exposure to COVID-19 is highly relevant to the sentence to be imposed. The Court cannot ignore that the Defendant has been exposed to COVID-19, a virus that has killed over 100,000 Americans.[2] Section 3553(a) requires an accurate assessment of the Defendant's current medical condition and what his treatment needs are. The Court has the authority to order an evaluation of the Defendant. *See* Ramirez-Robles, 2007 WL 2021852 at *30; *see* § 3553(a). A COVID-19 test is now essential under § 3553(a). Although the primary concern is health, it remains true that without such a test, the Court cannot properly balance the § 3553(a) factors and sentence the Defendant.

**C. COVID-19 Presents Exceptional Circumstances that Require the Immediate Evaluation of the Defendant to Ensure his Proper Treatment and Care.**

Despite the general rule that issues regarding conditions of confinement require a civil action, district courts have found that exceptional circumstances which might result in permanent harm can justify Court intervention. *See* Daprano, No. CR 04-2040 JB/KBM, Order, filed August 24, 2007 (Doc. 166) (*cited in* Loera, 2017 WL 3098257 at *27); *see also* Wallen, 177 F.Supp.2d at 458–59.

---

[2] *See Coronavirus in the U.S.: Latest Map and Case Count,* https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited June 4, 2020).

In Daprano, the Court ordered that a defendant's infected teeth to be pulled and that the U.S. Marshal was to replace the teeth. *See* Daprano, No. CR 04-2040 JB/KBM. In Wallen, the Court ordered that the defendant be taken to a hospital and receive treatment. In this case, a national pandemic has resulted in a national emergency being ordered. The Defendant has been exposed to a deadly disease that has killed over 100,000 Americans.[3] COVID-19 continues to silently infect American citizens, frequently through asymptomatic carriers.[4] Exceptional Circumstances exist. Fifth Amendment Due Process demands urgent action from the Court, and not a laborious process that threatens permanent harm. *See* Daprano, No. CR 04-2040 JB/KBM; *see also* Wallen, 177 F.Supp.2d at 458–59; Fernandez v. United States, 941 F.2d 1488, 1494 (11th Cir. 1991) (*quoting* Estelle v. Gamble, 429 U.S. 97 (1976)).

Nor are there any realistic civil remedies available. The Defendant is indigent. He does not have the money to hire a civil lawyer. Every day that passes jeopardizes his life. The U.S. Marshal has made it clear that COVID-19 testing will not occur. The Defendant's remedies are exhausted. Testing of the Defendant is necessary to protect her life and others. *See* Daprano, No. CR 04-2040 JB/KBM; *see also* Wallen, 177 F.Supp.2d at 458-459.

---

[3]  *See Coronavirus in the U.S.: Latest Map and Case Count,* https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited June 4, 2020).

[4]  Recently, the entire 2020 United States Military Academy graduating class of about 1,000 students was tested for COVID-19 in preparation for a live graduation ceremony with the President. One and a half percent of the class was found to be positive for COVID-19. All of them were asymptomatic carriers. Barbara Starr and Chandelis Dustter, Several cadets brought back for graduation at West Point test positive for Covid-19, https://www.cnn.com/2020/06/01/politics/west-point-cadets-coronavirus/index.html (last visited June 4, 2020).

**CONCLUSION**

Respectfully, the Order imposes artificial barriers to what is both a simple and necessary request. For the foregoing reasons, the Defendant respectfully requests that the Court order the U.S. Marshall and its designee—the Charlotte County Jail—to immediately test the Defendant for COVID-19.  See Estelle, 429 U.S. at 103.  The Court has the authority to order testing and should so order.  See Williams, 2009 WL 2824840 at *1; see also Ramirez-Robles, 2007 WL 2021852 at *29; Daprano, No. CR 04-2040 JB/KBM.

    Respectfully submitted,

    James T. Skuthan
    Acting Federal Defender

    /s/ Russell K. Rosenthal
    Russell K. Rosenthal .
    Florida Bar No. 319244
    Assistant Federal Defender
    2075 W. First Street, Suite 300
    Fort Myers, Florida 33901
    Telephone: 239-334-0397
    Facsimile: 239-334-4109
    E-Mail:russ_rosenthal@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of June 2020 the foregoing was electronically filed with the Clerk of Court and a copy will be sent electronically to: Yolande Viacava, Assistant United States Attorney, 2110 First Street, Fort Myers, FL 33901.

    /s/ Russell K. Rosenthal.
    Russell K. Rosenthal
    Assistant Federal Defender